BRUCE DUNCAN CO., INC. A/C SCHOOL FURNITURE IMPORT CO. *v.* UNITED STATES   (No. 5197)*

United States Court of Customs and Patent Appeals, June 16, 1966

*Stein & Shostak* (*Marjorie M. Shostak*, of counsel) for appellants.
*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Harold L. Grossman* for the United States.

[Oral argument April 4, 1966 by Miss Shostak and Mr. Grossman]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Associate Judges

SMITH, Judge, delivered the opinion of the court:

This is an appeal from the decision and judgment on rehearing of the United States Customs Court, First Division, overruling a protest against the collector's classification and duty assessment, 53 Cust. Ct. 184, C.D. 2493 (1964).

The merchandise at issue consists of "snap track blocks." These are wooden blocks having two space grooves on one face and mating male and female metal snap fastener components on their ends. They are contained in various boxed sets of wooden pieces, samples of which were received in evidence. Various sets also contain a "snap train." These are small wooden blocks resembling an engine and box cars having wheels and identical fastening means. By joining the snap

*C.A.D. 882.

blocks, a track for a "snap train" may be provided, as discussed infra. Various sets also contain other wooden pieces.

The imported sets were classified by the Collector of Customs at Los Angeles as toys under par. 1513 of the Tariff Act of 1930. Duty was assessed on the "snap track blocks" and the snap trains in the sets at 35% ad valorem under the provision in par. 1513, as modified, T.D. 52739, for toys, n.s.p.f., other than blocks or bricks. Duty was assessed on the remaining pieces in the various sets, which do not have snaps and grooves at 25% ad valorem under the provision in par. 1513, as modified, T.D. 51802, for building blocks or bricks valued at 8 cents or more per pound.

Appellants do not contest the classification of the sets as toys under par. 1513, nor the assessment of duty on the snap trains contained therein at 35% as toys, n.s.p.f. Appellants contend that the "snap track blocks" at issue herein, like the remaining pieces which do not have snaps and grooves, are properly classifiable under the provision in par. 1513 as modified, T.D. 51802, for "building blocks or bricks" valued at 8 cents or more per pound, and that they are properly dutiable thereunder at 25% ad valorem.

This case was the subject of decision of the trial court on two occasions. In *Bruce Duncan Co., a/c School Furniture Import Co.* v. *United States*, 47 Cust. Ct. 358 (Abs. 66198, 1961), the trial court sustained the classification of the collector and overruled the protest. Plaintiffs' motion for a rehearing to offer additional evidence was granted by the trial court, 47 Cust. Ct. 404 (Abs. 66312, 1961), and additional testimony was presented at a subsequent hearing at the port of entry.

The trial court, upon consideration of the combined records, again sustained the collector's classification and overruled the protest, 53 Cust. Ct. 184, C.D. 2493 (1964). This appeal followed.

The pertinent texts of the statutes involved herein are as follows:

Classified under:

Paragraph 1513, Tariff Act of 1930, as modified, T.D. 52739, supplemented by T.D. 52820:

Toys, n.s.p.f.:

\*       \*       \*       \*       \*       \*       \*

Other (except the following: building blocks or bricks valued 8 cents or more per pound; construction sets, other than model airplane construction sets, wholly or in chief value of metal and valued 30 cents or more per pound; \* \* \*)_____ 35% ad val.

Claimed under:

Paragraph 1513, Tariff Act of 1930, as modified T.D. 51802:

Toys, n.s.p.f.:

\*       \*       \*       \*       \*

> Model airplane construction sets, wholly or in chief value of metal, valued at 75 cents or more each; construction sets (other than model airplane construction sets), wholly or in chief value of metal, valued at 30 cents or more per pound; * * *; and *building blocks or bricks, valued at 8 cents or more per pound*_____ 25% ad val. (Emphasis supplied.)

In overruling the claim made in the protest and sustaining the classification of the collector, the trial court relied heavily upon the evidentiary value of the samples of the imported merchandise received in evidence herein, which it referred to in the following language:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The snap train tracks in controversy, as disclosed from an examination of the samples, are made of hardwood that has been processed to a smooth, clean finish. Some of the pieces are straight and others are curved. They vary in length from approximately 3½ inches to 8½ inches. All of them have been grooved in such a way as to fit the toy trains included in the sets, heretofore described. Each end of the tracks is fitted with a metal snap that serves as a connecting device in laying the tracks. An advertising circular, or brochure (plaintiff's exhibit 7), describes the merchandise as follows:

> The "snap-action" features of the train and the track have been play-tested and found to be exceptionally well preferred by youngsters. Sturdy snaps on tracks and trains make for easy, quick assembling. The "snap-action" creates interest and in itself is intriguing. * * *
>
> NOTE: The "plug-in" part of the snap has purposely been allowed to remain loose on all pieces of tracks and trains. This permits the track sections to be elevated for making bridges, etc., without unsnapping at the joints. On the trains it allows the cars to follow one another around the curves without coming off the track.

A detailed description of the snap tracks in question has been set forth because of the controlling effect of the samples in this case. Samples are potent witnesses. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995.

The basic premise in appellants' argument is that the "snap track blocks" in issue are building blocks having the *added* features of the snap connectors on their ends and one grooved face portion. This being true, appellants contend that despite these added features, the items in issue are still building blocks. Based on this premise, appellants' position here is:

1. That since substantial evidence is contained in the record as to the use of the snap tracks at bar, the samples do not have a controlling effect on their classification, as held by the trial court.
2. That the evidence adduced herein established that the snap tracks at bar are not dedicated to use solely with trains, as held by the trial court.
3. That the evidence established that the snap track blocks at issue are a recognized form of building block.
4. That the snap track blocks at bar are, accordingly, properly classifiable under the *eo nomine* provision for building blocks in Par. 1513 as modified by T.D. 51802, supra.

We have considered the physical exhibits and reviewed the testimony of appellants' witnesses. Considered in the light most favorable to appellants' position it is our opinion that the snap connectors and the grooved faces do not prevent simple or imaginative uses of the items as building blocks. The question remains, however, whether this testimony is sufficient to overcome the presumption of correctness which attaches to the collector's classification, particularly in view of the exhibits themselves. The Customs Court found that it was not and we agree.

The evidence herein establishes that children of different age levels use these articles in various ways. Children of the youngest age levels ignore the grooves and do not have the dexterity to use the snaps, while older children utilize all these features. In addition to using the pieces with grooves and snaps as tracks for trains, or as roadways, as illustrated on the covers of the various sets, some children use all these pieces interchangeably with those which are not grooved and do not have snaps, for purposes of construction, to make many different articles and many different kinds of structures.

There is no question but that the presence of the snaps and grooves on the items in issue gives them an added use not possible with comparable sizes of building blocks not provided with them. Thus, when blocks of similar shapes without grooves and snaps are used as tracks by children, they experience difficulties in preventing the vehicles from tumbling off. The blocks at bar have grooves and snaps added to them to prevent the vehicles from falling off and the blocks from separating, as the children play with them. Similar uses are also illustrated in the catalogs of Creative Playthings, Inc., received in evidence herein. Witness Orel pointed out that other blocks of other sizes are made with grooves of the same gauge as the track blocks at issue here, to accommodate the same vehicles as the snap track blocks at bar and that all of the grooved blocks accommodate not only the toy trains included in Exhibits 1 to 4 herein, but also other vehicles.

According to appellee, the basic weakness in appellants' argument is as follows:

Were we to accept the definitions and expositions of what constitutes a "building block," as delineated by appellant's witnesses, we would perforce be required to reach the absurd conclusion that if children were to superimpose one beer can upon another, said beer cans would properly be legally entitled to recognition and acceptance as "building blocks," or, if said children were to "construct" a "building" or "structure" by piling the massive volumes of the *Encyclopedia Brittanica* one upon the other, said authoritative volumes would become, for Customs purposes, "building blocks." Merely stating the proposition is, in our opinion, sufficient to clearly and logically reveal its total and complete unacceptability. As the Court below noted:

To consider the above-quoted testimony as favorable to plaintiff's contention, would reduce classification of merchandise as toy building blocks to an absolute absurdity.

Considering the exhibits themselves which consist of samples of the imported snap tracks, the covers of the boxes in which they are imported and sold throughout the United States, the literature enclosed in the sets describing the merchandise and its intended functions, and the testimony of appellants' own witnesses herein, we think that they establish that the imported snap tracks were conceived and manufactured with grooves and snaps so that the tracks would become an integral part of the train set.

There is no evidence in this record that the involved snap tracks are ever bought, sold, or commercially handled in the United States, other than as the track part of a train set. There is no evidence in this record that the involved snap tracks are ever bought, sold, or otherwise commercially handled in the United States, as a building block despite the fact that very young children may use the snap tracks exclusively for building blocks.

We have consistently adhered to the principle that as a court of review we do not sit to substitute our judgment on fact questions for that of the trial court except in those cases where the trial court's findings are contrary to the weight of the evidence or are not supported by substantial evidence. *United States* v. *C. J. Tower & Sons*, 38 CCPA 131, C.A.D. 450. Here, we think for the reasons above set forth the findings of fact of the Customs Court are not contrary to the weight of the evidence but are, in fact, supported by the substantial evidence of the physical exhibits.

The judgment of the Customs Court is *affirmed*.